IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Randy Lassiter,** ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | 1:19cv596 (LO/JFA) |
| ) | |
| **Deputy Klutts, et al.,** ) | |
| **Defendants.** ) | |

MEMORANDUM OPINION

Proceeding pro se, Virginia inmate Randy Lassiter ("plaintiff" or "Lassiter") initiated this civil action under 42 U.S.C. § 1983, alleging that defendants Sgt. Erica Williams ("Sgt. Williams" or "defendant Williams"), Cpl. Paul Brown ("Cpl. Brown" or "defendant Brown"), and Cpl. Erik Shildt ("Cpl. Shildt" or "defendant Shildt"), all officials at Norfolk City Jail ("NCJ"), failed to protect him from harm at the hands of other inmates. See Dkt. No. 12. Defendants have filed a motion for summary judgment arguing that they took appropriate measures to prevent plaintiff from being attacked. See Dkt. Nos. 19, 21. Plaintiff was provided the notice required by Local Civil Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1985), and opposes defendants' motion. See Dkt. No. 24. Because the undisputed factual record demonstrates that defendants were not deliberately indifferent to the risk plaintiff faced, they are entitled to judgment in their favor.

I. Background

Before recounting the statement of undisputed facts on which defendants' motion for summary judgment will be considered, a note about the statement's construction is in order. Local Civil Rule 56(B) requires the party opposing a motion for summary judgment to respond to the movants' offered assertions of fact, highlighting the facts he believes are in dispute and

citing to admissible evidence in the record to support the existence of such a dispute. See Loc. Civ. R. 56(B). Plaintiff, despite his pro se status, explicitly cited to and complied with Local Civil Rule 56(B) to the extent that he has responded to defendants' proposed list of undisputed facts. See Dkt. No. 24. But in responding to defendants' proposed facts, plaintiff has almost invariably failed to cite to admissible evidence in support of his positions. Id. The only relevant admissible evidence plaintiff has provided comes in the form of a sworn affidavit, see Dkt. No. 24, p. 9, and plaintiff does not even once cite to that piece of evidence.[1] Id. Despite plaintiff's failure to direct the Court to the admissible evidence that supports his position, the record has been scoured for any such information. What follows, then, are the undisputed facts relevant to this case.

1. On February 7, 2018, plaintiff was arrested on charges related to the assault of a family member and incarcerated at NCJ.

2. At all relevant times, defendants were employed by the Norfolk Sheriff's Office as deputy sheriffs and were assigned to NCJ.

3. Plaintiff was oriented to the NCJ on February 9, 2018 and provided with the inmate handbook, which details inmate grievance procedure. The procedure holds that grievance forms are available to all inmates and that if a floor deputy or supervisor cannot resolve the issue, that a form will be forwarded to the Team Commander for review. The handbook states that standard grievances will be answered within seven calendar days and that the response may be appealed on a grievance form. The procedure also allows for emergency grievances that "require immediate responses to issues that are an

---

[1] Plaintiff's unverified complaint [Dkt. No. 12] cannot serve to oppose defendants' motion for summary judgment. See, e.g., Huff v. Outlaw, No. 9:09-cv-520, 2010 WL 1433470, at *2 (D.S.C. Apr. 8, 2010) ("[T]he law is clear that a plaintiff cannot rely on an unverified complaint in opposing a motion for summary judgment."). And the medical documentation plaintiff has submitted [Dkt. No. 23] is not only irrelevant to the question of whether defendants were deliberately indifferent in the buildup to plaintiff's assault, but is also unverified and thus inadmissible. See Miskin v. Baxter Healthcare Corp., 107 F. Supp. 2d 669, 671 (D. Md. 1999) ("To be admissible at the summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)—that the documents be admissible in evidence."). Those documents are therefore not here considered.

immediate threat to life, safety, or health" and are answered and returned to the inmate within 24 hours.[2]

4. The inmate handbook also addresses Communication Forms, providing that, if an inmate has "a question that cannot be answered by a floor deputy, [he] may request a Communication Form for [his] correspondence to different departments within the NSO."[3]

5. NCJ has a strict policy regarding inmate safety. If an inmate makes a statement to a staff member, however concerning, regarding a fear or threat to his/her safety, or identifies an inmate as an enemy, the inmate is automatically pulled out and moved. NCJ maintains a "Keep Separate" or "enemies list" for each inmate, including plaintiff, to ensure the inmates' safety.

6. The Inmate Handbook also provides instruction on how to appeal classification decisions and allows for an appeal "based on issues of personal health and welfare." It instructs inmates to "[c]learly describe adversarial relationships with other inmate(s) (identified by name) and justifiable fear of victimization . . . ."

7. Plaintiff submitted written requests multiple times during his incarceration at NCJ for issues unrelated to his claims or his safety. There are no records of plaintiff's having filed any grievance during his incarceration, including an emergency grievance citing "an immediate threat to [his] life, safety, or health" or a grievance or appeal related to the assaults. Nor are there records of plaintiff's having appealed a housing classification.

8. On February 9, 2018, plaintiff identified Ricardo Spencer as his enemy in Block 6K. Plaintiff requested to be and was moved from the block.

9. On February 24, 2018, plaintiff claimed that he was assaulted in Block 6D. He was taken to medical and treated for minor injuries: a "small superficial abrasion to side of left brow and several small superficial scratches noted to right arm." Plaintiff could not identify his attackers but stated that Kenneth Walck, Isiah Swift, Dequan Green, and Aubrey

---

[2] In his response to this fact, plaintiff disputes that the grievance procedure "allow[ed] for forms because [NCJ staff] would never give [plaintiff] one at anytime [sic]." Dkt. No. 24. Although plaintiff's sworn declaration supports this claim insofar as it states that plaintiff was never given an emergency grievance when he requested one, his "dispute" is not truly inconsistent with the statement offered by defendants.

[3] In response to this fact plaintiff again takes issue with the notion that defendants were responsive to his requests for forms and argues that defendants have provided a misleading sample of the forms he actually submitted. But this is not inconsistent with defendants' statement as offered and is unsupported by any admissible evidence.

3

Burrus were the possible assailants. Those individuals were placed on plaintiff's enemy list.[4]

10. On March 6, 2018, when plaintiff was in Block 6A, he informed Cpl. Valencia that he was in fear for his life because while inmates from Block 6D were being escorted to the gym, they began calling him a "snitch" and "police," and that several inmates "ran up on him" and told him that he "needed to get out of the block." Plaintiff was moved from Block 6.

11. Six weeks later, on April 25, 2018 when plaintiff was again transferred to Block 6, he identified four inmates as enemies; they were immediately placed on his enemies list.

12. Two and one-half months later, on July 5, 2018, plaintiff was assaulted by four inmates in Block 7E who were attempting to take his canteen. Plaintiff was taken to medical and treated for minor injuries: a "small laceration to lower lip, inside mucosa, trace dried blood to area. No bruising . . . ."[5]

13. None of the four inmates involved in the attack in Block 7E had been identified by plaintiff as a possible assailant following the February 24, 2018 incident in Block 6D or named by plaintiff on April 25, 2018 as enemies in Block 6D. The four assailants from 7E, Rashee Parson, Kamonte Washington, Jamall Banks, and Shane Knight, were added to plaintiff's enemy list and several were transferred to Hampton Roads Regional Jail.[6]

14. On July 6, 2018, plaintiff was counseled about returning to Block 7E, where he had been assaulted. Plaintiff consented to the move.

15. Over eight months later, on March 25, 2019, plaintiff refused to enter and stay in Block 7J because he felt unsafe. When questioned by Deputy Davis, he failed to provide a reason for not feeling safe or identify any individual who made him feel unsafe. He was nevertheless moved, and on March 27, 2019, was assigned to Block 5D.[7]

---

[4] In response to this proposed fact, plaintiff asserts that he affirmatively identified his assailants but concedes that those individuals were added to his enemy list. Dkt. No. 24.

[5] Plaintiff states that his assailants were members of the Blood Gang and that one of those individuals was the brother of an individual on plaintiff's enemy list. Plaintiff does not cite to admissible evidence in support of this claim.

[6] Plaintiff again claims in response to this fact that one of his assailants was Mr. Walck's brother, but plaintiff does not cite to admissible evidence in support of that claim.

[7] Plaintiff asserts that he did not feel safe in Block 7J because members of the Blood Gang were housed there. Dkt. No. 24. Plaintiff claims to have told Deputy Davis as much. Id. Plaintiff, though, does not cite to admissible evidence in support of this position and does not dispute the proposition that he was moved promptly from Block 7J.

16. On April 17, 2019, plaintiff was assaulted by Gerald Jenkins in Block 5D. Jenkins was not identified by plaintiff as a possible assailant following the February 24, 2018 incident, nor was he named by plaintiff as an enemy on April 25, 2018, or as one of the assailants in the July 5, 2018 incident. Jenkins was added to plaintiff's enemy list, immediately transferred to Hampton Roads Regional Jail, and criminally charged.[8]

17. Plaintiff was taken to medical and then to the Sentara Norfolk General Hospital emergency room for treatment for facial injuries.

18. On April 23, 2019, plaintiff was released from NCJ and transferred to Hampton Roads Regional Jail.

19. The alleged assault in February 2018 in Block 6D, and the two assaults caught on video in July 2018 in Block 7E and in April 2019 in Block 5D came without warning. Plaintiff did not identify any one of the inmates involved or thought to be involved in those incidents as an enemy ahead of time. Nor had plaintiff verbally or in writing requested to be reclassified, filed an emergency grievance, or informed any of the defendants that he was fearful of his life, had been threatened or was in danger of being attacked by any one of those individuals.[9]

20. Sgt. Williams was the D team supervisor during plaintiff's incarceration. On July 5, 2018, when plaintiff was assaulted by the four inmates who stole his canteen, Sgt. Williams responded to a call for assistance, and reviewed and added her findings to Deputy Okereke's Incident Report.[10]

21. Sgt. Williams never had a conversation with plaintiff before or after the assault in which plaintiff stated he was in fear of his life or that he had been threatened, or in which he identified any enemies. Nor had any other deputy informed her that plaintiff had expressed a fear for his safety.

---

[8] Plaintiff claims to have told Cpl. Brown of the threat Jenkins posed to him but does not assert when he did so and does not support his claim with any admissible evidence.

[9] Plaintiff notes that he was never provided an emergency grievance and cites to his sworn affidavit in support of that assertion. While this statement is not inconsistent with defendants' statement that plaintiff never filed an emergency grievance, the parties' assertions clearly are at odds. Accordingly, the fact as presented above omits defendants' statement that plaintiff failed to file any emergency grievance to inform them of the danger he faced.

[10] Plaintiff's offered dispute with this fact is not easy to understand. He states that "Sgt. Williams D team supervisor disregard that she was deliberate indifference about me explaining to her that I was in fear of my life to save her getting in trouble." Dkt. No. 24. It seems that plaintiff is suggesting that he informed Sgt. Williams of a potential danger he faced and that Williams did not act in response to that danger. But because plaintiff has not supported this position with any admissible evidence, the fact above does not reflect this claim.

22. Cpl. Brown was the supervising deputy on B Team during plaintiff's incarceration. In that role, he was responsible for performing supervisory security rounds twice an hour. Plaintiff never expressed to Cpl. Brown that he was in fear for his safety or had been threatened. Nor did any deputy whom Cpl. Brown was supervising ever report to him that plaintiff had expressed a fear for his safety or that he had been threatened.[11]

23. Cpl. Shildt was on D Team during plaintiff's incarceration. Following the July 5, 2018 assault, Cpl. Shildt was called to assist. He observed plaintiff's injuries and helped in pulling plaintiff from the block.

24. Cpl. Shildt also served a disciplinary charge on plaintiff following the altercation. After the Special Threats Unit investigated the July 5, 2018 incident, plaintiff was found not guilty and the disciplinary charge was dismissed. His assailants were criminally charged.

25. Plaintiff never expressed to Cpl. Shildt that he was in fear for his safety or had been threatened. No other deputy ever informed Cpl. Shildt that plaintiff had expressed a fear for his safety.[12]

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial ... by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v.

---

[11] Plaintiff's offered dispute with respect to this fact is also borderline incoherent. Plaintiff asserts: "Cpl. Brown B team supervisor clearly was in deliberate indifference when he stated I just said that on March 25, 2019 to Deputy Davis that I was in fear for my life & felt unsafe. . . ." It again appears that plaintiff seeks to impute knowledge of the risk plaintiff faced on Cpl. Brown, but plaintiff again fails to offer any admissible evidence in support of that claim.

[12] In response to this claim plaintiff states, "Schildt on D. team knew once I told him that day." Dkt. No. 24. Plaintiff does not support this claim with any admissible evidence.

6

Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III. Analysis

Plaintiff argues that defendants violated his constitutional rights by failing to protect him from harm at the hands of other inmates. To prevail as to such a claim, a prisoner must satisfy a two-part inquiry consisting of objective and subjective prongs. Raynor v. Pugh, 817 F.3d 123, 127 (4th Cir. 2016). With respect to the objective prong, the prisoner "'must establish a serious deprivation of his rights in the form of a serious or significant physical or emotional injury' or a substantial risk thereof." Id. (quoting Danser v. Stansberry, 772 F.3d 340, 346-47 (4th Cir. 2014)). Subjectively, the plaintiff must show that the defendant had a "sufficiently culpable state of mind," consisting of "deliberate indifference to inmate health and safety." Raynor, 817 F.3d at 127-28 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). To establish deliberate indifference, a plaintiff must show that the official actually "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837; Raynor, 817 F.3d at 128. A prison official aware of such a risk to an inmate fulfills his or her constitutional obligation by taking reasonable steps to avert harm befalling the inmate, even if the harm still later occurs. Farmer at 844-45.

*A.*   *Serious or Significant Physical or Emotional Injury*

The record establishes that plaintiff was attacked on three occasions while incarcerated at NCJ: on February 24, 2018, July 5, 2018, and April 17, 2019. To the extent plaintiff sought to bring a claim with respect to the first of these two incidents, he has not satisfied the "serious

7

injury or risk" standard described above. Plaintiff sustained only minor injuries on these occasions—a "superficial abrasion ... and several small superficial scratches" the first time and a "small laceration to the lower lip" the second. Simply put, these injuries, as a matter of law, are not serious enough to support a failure to protect claim. Cf. Saunders v. Buckner, No. 1:07cv501, 2008 WL 4104439, at *6 (E.D. Va. Aug. 28, 2008) (finding that "a small cut to [plaintiff's] chin" did not satisfy the "serious or significant physical injury" standard); Shelton v. Schilling, No. Civ. A. 7:04-cv-228, 2005 WL 2406094, at *5 (W.D. Va. Sept. 29, 2005) (finding that "a small cut on [plaintiff's] right thigh and hip and shoulder pain" were not serious or significant enough injuries on which to base a failure to protect claim).

The record makes clear, though, that the injuries plaintiff suffered as a result of the third attack—on April 17, 2019—were much more extensive. Indeed, after being attacked on the third occasion, plaintiff was hospitalized for facial injuries. Although the record does not clarify what type of treatment plaintiff received or the exact nature of the injuries he incurred, the fact that plaintiff was hospitalized itself supports an inference that he was injured more severely during the third attack than he was during the first two; plaintiff received attention at the NJC medical facilities the first two times he was attacked but was not hospitalized. On this basis, the Court is satisfied that plaintiff has met his burden with respect to the first prong of the test listed above; there is evidence on which a reasonable factfinder could determine that plaintiff's injuries were serious or significant. Cf. Byrd v. South Carolina Dept. of Corr., No. 5:11-3340-MGL, 2013 WL 5309759, at *11 (D.S.C. Sept. 19, 2013) (finding plaintiff suffered a significant or serious injury where she was "hospitalized following [an] attack, required multiple stitches to close the wound on her face, and has a permanent scar on her face"). Moreover, defendants do not appear to contest this point; they instead spend the vast majority of their motion for summary judgment

contesting the notion that they were indifferent to the danger plaintiff faced and do not appear to oppose a finding that the injuries plaintiff incurred satisfy the first prong of the test described above. See Dkt. No. 21.

B.  *Deliberate Indifference*

The major point of contention in this case is whether defendants acted with deliberate indifference to plaintiff's wellbeing. As noted above, to establish deliberate indifference, a plaintiff must show that the official actually "knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. The record in this case makes clear that the defendants lacked any such knowledge; as explained below, there is insufficient evidence to raise a legitimate dispute as to whether defendants knew plaintiff faced any risk from the inmates who attacked him on the occasions they did. The record makes equally clear that on each occasion NCJ staff learned of any potential threat to plaintiff's safety, they acted reasonably to mitigate the risk he may have faced.

Plaintiff's allegations as to the named defendants' specific involvement in this case were broad and somewhat vague, and the admissible evidence implicating the defendants with respect to this failure to protect claim is meager. Indeed, the only evidence that these three defendants were aware that plaintiff faced any risk to his wellbeing comes in the form of a self-serving affidavit. In it, plaintiff attests that he "forewarned each defendant about ... being in fear for [his] life" and that the defendants "never took [him] serious [sic]." See Dkt. No. 24, p. 9.

But this vague statement, devoid of any specificity with respect to the time, place, or manner in which he informed defendants of his fear, is effectively a conclusory recitation of the elements of his failure to protect claim and is insufficient, standing alone, to support this claim at summary judgment. See, e.g., Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999)

9

("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a ... motion for summary judgment."); Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) (finding plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places ... It's all around us" was conclusory and therefore insufficient to satisfy the requirements of Fed. R. Civ. P. 56(e)); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) ("Conclusory or speculative allegations do not suffice [for establishing a genuine dispute of material facts], nor does a mere scintilla of evidence in support of [the plaintiff's] case.").

Unfortunately for plaintiff, the "mere scintilla" just described constitutes the entirety of the admissible evidence on which plaintiff seeks to hold defendants liable. No other admissible evidence demonstrates that the named defendants were aware of any risk plaintiff faced at the hands of his assailants. The record demonstrates instead that Sgt. Williams was the "D team supervisor" while plaintiff was incarcerated at NCJ. On July 5, 2018, when plaintiff was assaulted by four inmates, she responded to a call for assistance and included her recollections in an incident report. She was never advised by plaintiff or other jail officials that plaintiff expressed fear for his safety or had been threatened by another inmate. Affidavits submitted by Cpls. Shildt and Brown establish that they, too, were never told that plaintiff expressed fear for his safety or had been threatened by another inmate.

Even looking at the evidence more generally, there is no basis to support a finding that the defendants—or truly any official at NCJ—acted with deliberate indifference. On February 8, 2018, before he was ever attacked at NCJ, plaintiff identified inmate Ricardo Spencer as his enemy. Spencer was added to plaintiff's enemy or "Keep Separate" list. Mr. Spencer, though, was not one of the individuals to attack plaintiff two weeks later, on February 24, 2018. After

10

plaintiff was attacked on the 24th, the assailants plaintiff identified were also added to the "Keep Separate" list. None of those individuals were those who attacked plaintiff on July 5, 2018. Plaintiff's July 5 assailants were added to the "Keep Separate" list. None of the newly-added individuals were those who attacked him on April 17, 2019. Between these assaults, plaintiff regularly appears to have raised concerns to staff as to his potential wellbeing. The record demonstrates that, on each of those occasions, either plaintiff or the individual in question was moved and, in some cases, even transferred out of NCJ.

To plaintiff's detriment, the evidentiary record in this case simply contains very little information that allows for an inference that the named defendants knew of and disregarded potential risks to plaintiff's health. The record, though, paints a very clear picture of the efforts unnamed NCJ officials took on a variety of occasions to insulate plaintiff from risk: on each occasion they learned of a potential danger plaintiff faced or inmate with whom plaintiff had a potential conflict, they acted to mitigate that risk or conflict. On the occasions that plaintiff was attacked and harmed, the record does not demonstrate that defendants had any knowledge that plaintiff was at risk of being harmed in the manner he was. While it is undeniably unfortunate that plaintiff was attacked and suffered in the manner he did, there is simply no evidentiary basis on which to blame the defendants for that suffering.

### IV. Conclusion

For the foregoing reasons, defendants' motion for summary judgment must be granted. An appropriate order will issue alongside this memorandum opinion.

Entered this 6th day of August 2020.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

11